No. 23-20618

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

ZAHRA SHAHRASHOOB,

*Plaintiff – Appellant*

v.

TEXAS A&M UNIVERSITY,

*Defendant – Appellee*

---

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
USDC No. 4:22-cv-00699

---

# APPELLANT'S BRIEF

---

Timothy A. Hootman
2402 Pease St.
Houston, TX 77003
713.366.6229
thootman2000@yahoo.com

ATTORNEY FOR PLAINTIFF –
APPELLANT

## CERTIFICATE OF INTERESTED PERSONS

(1)    No. 23-206-18; *Zahra Shahrashoob v. Texas A&M University*

(2)    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

**Plaintiff – Appellant:**    Dr. Zahra Shahrashoob

**Counsel for Appellant on appeal:**    Timothy A. Hootman
Tex SBN 09965450
2402 Pease St.
Houston, TX 77003
713.366.6229
thootman2000@yahoo.com

**Counsel for Appellant in the district court:**    Marc Anson Bozeman
Tex. Bar No. 24057044
Fed. Bar No. 1533462
5499 Braisvalley Dr., No. 462
Houston, TX 77096
832.741.7950
mb@bozemanlitigation.com

**Defendant – Appellee**    Texas A&M University System

**Counsel for Appellee on appeal and in the district court:**    Yvonne Denise Bennett
Assistant Attorney General
Tex. Bar No. 24052183
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
Grant Dorfman
Deputy First Assistant General
Shawn Cowles

1

Deputy Attorney General for Civil Litigation
Christopher D. Hilton
Chief-General Litigation Division
P.O. Box 12548
Austin, TX 78711-2548
512.463.2120
yvonne.bennett@oag.texas.gov

**Additional parties in the district court:**    Texas A&M at College Station
Chancellor John Sharp
Texas A&M Board of Regents
Katherine Banks-President
Dr. Arul Jayaraman
Dr. N.K. Anand
Damon Slaydon
Jennifer Smith
Dr. Blanca Lupiani
Dr. Micah Green
Dr. Victor Ugaz
Dr. Jodie Luthkenhaus
Dr. Anastasia Muliana
Jaime Andres
Gary Blizzard
Kevin McGinnis

**Trial court judge:**    Hon. United States District Judge Lee H. Rosenthal

/s/Timothy A. Hootman
Timothy A. Hootman
ATTORNEY FOR PLAINTIFF-APPELLANT

## REQUEST FOR ORAL ARGUMENT

Appellant believes oral argument would assist the Court in deciding the propriety of the district court's grant of summary judgment in favor of Texas A&M University as to both Dr. Shahrashoob's Title VII discrimination and retaliation claims because of the complexities of the appellate record and the district court's failure to address a key factual basis of the claim; namely, her replacement by Dr. Alam.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................... 1

REQUEST FOR ORAL ARGUMENT ......................................................... 3

TABLE OF CONTENTS ............................................................... 4

TABLE OF AUTHORITIES ............................................................ 6

STATEMENT OF JURISDICTION ...................................................... 8

    a. District court jurisdiction. ...................................................... 8

    b. Fifth Circuit Court of Appeals jurisdiction. ........................... 8

ISSUES PRESENTED FOR REVIEW ...................................................10

STATEMENT OF THE CASE ........................................................ 11

    a. Chronology of events before Dr. Shahrashoob filed suit against Texas A&M University. ............................. 11

    b. Dr. Shahrashoob's initial complaint and the paring down of the case. ....................................................... 17

    c. Dr. Shahrashoob's second amended complaint and Texas A&M University's motion to dismiss ................... 19

    d. Texas A&M University's motion for summary judgment and Dr. Shahrashoob's response, and a further paring down of the case ........................................... 20

        i. *Texas A&M University's motion for summary judgment.* ................................................. 20

        ii. *Dr. Shahrashoob's response.* .................................... 23

        iii. *Texas A&M University's reply* .................................. 25

    e. The district court's memorandum opinion and judgment granting Texas A&M University's motion for summary judgment as to the Title VII discrimination and retaliation claims ................................ 26

SUMMARY OF ARGUMENT ................................................... 30

ARGUMENT ......................................................................... 32

    a.  Introduction to the argument.............................................. 32

    b.  The standards of review applicable to the district
        court's grant of summary judgment. .................................. 34

    c.  The burdens of proof in a Title VII discrimination
        and retaliation case.............................................................35

    d.  Discussion as to why the district court's ruling on
        the Title VII discrimination and retaliation
        claims should be reversed.................................................. 39

CONCLUSION AND RELIEF SOUGHT ...................................... 44

CERTIFICATE OF SERVICE .................................................... 45

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7) ............................. 45

# TABLE OF AUTHORITIES

**Cases:**

*Allen v. U.S. Postal Serv.*, 63 F.4th 292 (5th Cir. 2023)....................35

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).......................35

*Badgerow v. REJ Props., Inc.*, 974 F.3d 610 (5th Cir. 2020).................................................................................... 34

*Bauer v. Bailar*, 647 F.2d 1037 (10th Cir. 1981)............................... 39

*Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 140 S. Ct. 1731 (2020) .............................................................................35, 36

*Bryan v. McKinsey & Co., Inc.*, 375 F.3d 388 (5th Cir. 2004)..................................................................................... 38

*Chescheir v. Liberty Mut. Ins. Co.*, 713 F.2d 1142 (5th Cir. 1983)..................................................................................... 39

*Connecticut v. Teal*, 457 U.S. 440 (1982)........................................ 36

*Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025 (5th Cir. 1980) ................................................................ 39

*Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321 (5th Cir. 2011) ........................................................35

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009) ................. 38

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 (5th Cir. 1995)..................................................................................... 38

*McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007).. 37, 38, 40

*McDonnell Douglas Corp. v. Green*, 411 U.S. 782 (1973)...... 37, 38, 40

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982) ............................35

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000) .............................................................................................35

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ............................................................................ 39

*West v. City of Houston, Texas*, 960 F.3d 736 (5th Cir. 2020)..................................................................................... 38

*Wheeler v. BL Dev. Corp.*, 415 F.3d 399 (5th Cir. 2005) ................. 38

*Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853 (8th Cir. 2004)................................................................................ 38

**Rules:**

FED. R. CIV. P. 56(a) .............................................................. 34

**Codes:**

18 U.S.C. § 1295 ..................................................................... 9

28 U.S.C. § 1331 ..................................................................... 6

42 U.S.C. § 1981 ....................................................................18

42 U.S.C. § 1983 ....................................................................18

42 U.S. C. § 2000e ..........................................................35, 36, 37, 39

## STATEMENT OF JURISDICTION

### a.    District Court jurisdiction.

Dr. Zahra Shahrashoob filed a complaint in the United States District Court for the Southern District of Texas, Houston Division, against Texas A&M University and 16 other defendants seeking relief pursuant to the 14th Amendment due process and equal protection clauses of the United States Constitution, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, Title VI of the Civil Rights Act of 1964, and Title IX of the Education Amendments Act of 1972 (ROA. 14-17). Dr. Shahrashoob filed an amended complaint adding a request for relief pursuant to 42 U.S.C. §§ 1981 and 1983 (ROA.111-132). Because Dr. Shahrashoob's claims arise under the Constitution and laws of the United States, the district court had jurisdiction pursuant to 28 U.S.C. § 1331.

### b.    Fifth Circuit Court of Appeals jurisdiction.

On November 28, 2023, the district court granted summary judgment in favor of defendant Texas A&M University by signing its memorandum opinion (ROA.544-559). On that same day, the district court signed its final judgment dismissing Dr. Shahrashoob's case with prejudice (ROA.560). Prior to the district court signing the

memorandum and opinion and final judgment, the other 16 defendants had been removed from the case by various procedural steps not at issue in this appeal (ROA.246, 475). On December 23, 2023, Dr. Shahrashoob filed a timely notice of appeal (ROA.561-562) thereby giving this Court jurisdiction over this appeal pursuant to 18 U.S.C. § 1295.

# ISSUES PRESENTED FOR REVIEW

## 1.

Whether the district court erred in granting Texas A&M University's motion for summary judgment as to Dr. Shahrashoob's Title VII discrimination claim.

## 2.

Whether the district court erred in granting Texas A&M University's motion for summary judgment as to Dr. Shahrashoob's Title VII retaliation claim.

## STATEMENT OF THE CASE

**a.** **Chronology of events before Dr. Shahrashoob filed suit against Texas A&M University.**

The summary judgment evidence shows that the following events took place before Dr. Shahrashoob filed suit against Texas A&M University:

On June 12, 2018, Texas A&M University sent Dr. Shahrashoob an offer of appointment as **lecturer** for the 2018-2019 nine-month education period (from September 1, 2018 to May 31, 2019) at a salary of $7,000 per month in the Artie McFerrin Department of Chemical Engineering, which she signed accepting (ROA. 426-427). The lecturer position does not require a Ph.D. (ROA.418). The job required Dr. Shahrashoob to teach classes in chemical engineering and to perform other duties assigned by the department head (ROA.417).

On February 26, 2019, Texas A&M University sent Dr. Shahrashoob an offer of appointment as **instructional assistant professor** for 2019-2020 nine-month education period (from September 1, 2019 to May 31, 2020) at a salary of $7,000 per month in the Artie McFerrin Department of Chemical Engineering, which

she signed accepting (ROA.428-429). The agreement includes a provision making the appointment "renewable each year for three years contingent upon your satisfactory performance and the availability of funds" (ROA.482). The instructional assistant professor position requires a Ph.D. (ROA.418). The job required Dr. Shahrashoob to perform the same duties as a lecturer and to also "conduct pedagogical research as pertaining to education [and] course development" (ROA. 418).

In March of 2019, Dr. Arul Jayaraman became "acting department head" of the Department of Chemical Engineering (ROA.417).

On January 23, 2020, Dr. Jayaraman sent Dr. Shahrashoob an offer of appointment as instructional assistant professor for 2020-2021 nine-month education period (from September 1, 2020 to May 31, 2021) at a salary of $8,195 per month in the Artie McFerrin Department of Chemical Engineering, which she signed accepting (ROA.430-431). The agreement includes a provision stating that the agreement "is contingent, and not limited to, your continued satisfactory performance, the existence of continued funding for the

position throughout the term of the offered employment, and the academic needs of the department" (ROA.430).

On March 18, 2020, Dr. Jayaraman sent Dr. Shahrashoob an email stating:

> In our meeting on February 24, 2020, you told me for the first time about your concerns on not having a[n] office consistent with other similarly titled faculty. In response to your concerns, we identified a temporary office for you in JEB and are now ready to relocate you there. Let me know when you are ready to move into your new office and I will ask the department staff to take care of it.
>
> As mentioned previously, the office allocated to you (JEB 332) is temporary space; when we complete the planned renovations and reorganization of offices in JEB, we will relocate all the APT faculty (including you) with offices on the 3rd floor of JEB to the 2nd floor of JEB.

(ROA.433); (see also ROA.420).

On April 17, 2020, Dr. Shahrashoob "filed a complaint of discrimination against" Dr. Jayaraman alleging that he "created a hostile work environment by committing one or more acts of discrimination based on national origin at the Texas A&M College of Engineering" (ROA.446). Eleven days later Texas A&M University's Assistant Vice President of Compliance and Title IX Officer assigned investigator to investigate the complaint and to prepare a report of the investigation (ROA.446).

On May 8, 2020, Dr. Jayaraman, sent Dr. Shahrashoob a memorandum stating:

> The Department of Chemical Engineering regrets to inform you that we will not be able to adjust your pay for a second time to meet the PERM prevailing wage requirements for a Nonagricultural Immigration Program application ($98,340 annual salary). This decision is based on budgetary constraints. Your previous offer dated January 23, 2020 (signed January 24, 2020) will still be valid.

(ROA.432).

On June 13, 2020, Dr. Shahrashoob filed a complaint with the Texas Workforce Commission, Civil Rights Division listing a variety of complaints and stating:

> In the same February 24th meeting, Dr. Jayaraman told me that I would receive an updated letter in a few days with adjusted wages and responsibilities. He told me I should talk to my husband to ensure my husband agreed with it. I was insulted by this because Dr. Jayaraman implied I cannot make decisions without my husband. Dr. Jayaraman also agreed to keep my workload at six credit hours per semester. Since this meeting I have not received an updated offer letter nor was action taken to reduce my course load. On May 28th Dr. Jayaraman reiterated he would reduce my course load for Fall 2020 but this reduction is not apparent as of yet.
>
> I reported the discrimination case to the Title IX office at Texas A&M University on March 4th. I also reported my concerns to Dr. Anastasia Muliana (Ombudsperson, Indonesian, Female) on March 5th. On March 6, 2020 I met with Damon Slaydon (TEES Director, Male, American) and he agreed my pay rate needed adjusting. On the same day, Dr. N.K. Anand (Executive Dean, Indian, Male) called me a demanding person and said I needed to do whatever my boss tells me. Dr. Anand and Dr. Muliana told me if I had not complained to Title IX about the

> discrimination then they would have helped me. I received a memo from Dr. Jayaraman on May 11, 2020 citing budgetary constraints as the reason for inability to meet prevailing wage requirements by raising my pay.

(ROA.434). Dr. Jayaraman received this letter on June 24, 2020 (ROA.420).

On July 3, 2020, Dr. Shahrashoob sent Dr. Victor Ugaz[1] an email regarding her duties and responsibilities (ROA.496) and, after Dr. Ugaz did not respond, she sent him a follow-up email on August 3, 2020 (ROA.494-496) pointing out the various ways she had been treated differently from others, and stating in conclusion as follows:

> The only difference I see between myself and the other faculties in the department is that I am an Iranian woman. Is this the reason that department leadership is treating me differently than others? Or is it because I have exercised my protected rights filing a discrimination complaint with the Texas Workforce Commission?

(ROA.494, 496).

---

[1] Dr. Ugaz, Professor and Director for Undergraduate Progam, Department of Chemical Engineering, was responsible for making course assignments to department faculty (ROA.452). In that capacity he "worked with Dr. Jayaraman to assign classes" and " he was aware that there was a title change for Shahrashoob that included a certain teaching load that was different from her from her previous title" (ROA.452).

On August 4, 2020, Mr. Ryan Jackson, Compliance Investigator, Department of Civil Rights and Equity Investigations, sent Dr. Shahrashoob an email stating:

> I hope this finds you well. I am checking because the below email was forwarded to us. In the email, you seem to be alleging that Dr. Ugaz has either discriminated against you or has retaliated against you for filing a complaint with the Texas Workforce Commission and our office. Are you interested in making any charges against Dr. Ugaz?

(ROA.494). The forwarded email was the two emails that Dr. Shahrashoob had sent to Dr. Ugaz 30 days prior (ROA.494-496).

On August 14, 2020, Dr. Jayaraman and Dr. M. Katherine Banks, Vice Chancellor of Engineering and National Laboratories & Dean of Engineering sent Dr. Shahrashoob a memorandum providing "official notification of the terms and conditions of your appointment for the 2020-2021 academic year, pending final approval of the budget by the Texas A&M University System Board of Regents" (ROA.435, 498).

On September 1, 2020, Dr. Shahrashoob sent an email to Dr. Jayaraman asking various questions about her employment, and on September 10, 2020, Dr. Jayaraman responded (ROA.437-440).

On September 16, 2020, Mr. William J. Warren, Compliance Investigator, Investigative Authority, send a final report

memorandum to Blanca Lupiani, Dean of Faculties and Associate Provost, Designated Authority, regarding the complaint that Dr. Shahrashoob had filed against Dr. Jayaraman on April 17, 2020 (ROA.446-463).

On September 22, 2020, Dr. Shahrashoob filed a complaint with the Texas Workforce Commission Civil Rights Division stating:

> On August 14, 2020, a letter was sent to me indicating that the duration of my contract was drastically reduced. Although I have performed all my duties, my student reviews are higher than the department average, and my annual evaluations met the expectations, I am the only faculty that will be terminated due to budgetary constraints. The budgetary constraints are a pretext for discrimination as Dr. Jayaraman was promoted to the department head in June 2020. At least three new instructors were hired and two employees were promoted. The department has hired Mohammad S. Alam (Instructor, Indian, Male) to replace me.

(ROA.441).

On January 14, 2021, Dr. Jayaraman sent Dr. Shahrashoob a letter stating:

> This letter is to affirm the end of your 4.5 month appointment for Fiscal Year 2021 with the Artie McFerrin Department of Chemical Engineering at Texas A&M University. Per the letter you received on August 17, 2020 reflecting the reappointment status for Fiscal Year 2021, your last day of employment is January 15, 2021.

(ROA.436).

On December 30, 2021, the Equal Employment Opportunity Commission ("EEOC") sent Dr. Shahrashoob a right to sue letter regarding complaints she had filed against Texas A&M University (ROA.444-445).

### b.    Dr. Shahrashoob's initial complaint and the paring down of the case.

On March 4, 2022, Dr. Shahrashoob filed her complaint against Texas A&M University (and other defendants) alleging as theories of recovery violations of (1) 14th amendment due process and equal protection; (2) Title VII of the Civil Rights Act of 1964; (3) the Americans with Disabilities Act of 1990 ("ADA"); (4) Title VI of the Civil Rights Act of 1964; and (5) Title IX of the Education Amendments Act of 1972. (ROA.11-31).

On April 26, 2022, Dr. Shahrashoob filed her first amended complaint against Texas A&M University (and other defendants) alleging the same theories of recovery she alleged in her initial complaint, but adding the additional theory of violation of 42 U.S.C. § 1981 (ROA.111-132).

On July 25, 2022, Texas A&M University (and the other defendants) filed a motion to dismiss the first amended complaint

(ROA.179-195). Dr. Shahrashoob filed a response (ROA.197-204), and Texas A&M University filed a reply (ROA.218-227).

On August 26, 2022, a memorandum opinion issued on the motion to dismiss (ROA.228-247) whereby (1) the district court noted that Dr. Shahrashoob had voluntarily dismissed as to defendants Katherine Banks, John Sharp, Gary Blizzard and the Texas A&M Board of Regents, and whereby the district court (2) dismissed the Title VI and Title VII claims against the individual defendants, (3) dismissed the 42 U.S.C. §§ 1983 and 1981 claims against Texas A&M University, Texas A&M at College Station and the individual defendants in their official capacity, (4) dismissed the ADA and Title IX claims against all defendants, and (5) dismissed the 42 U.S.C. §§ 1983 and 1981 claims against the individual defendants in their personal capacity (ROA.246). The memorandum opinion also allowed Dr. Shahrashoob to file a second amended complaint by September 22, 2022. (ROA.246).

**c.  Dr. Shahrashoob's second amended complaint and Texas A&M University's motion to dismiss.**

On September 22, 2022, Dr. Shahrashoob filed her second amended complaint alleging as theories of recovery violations of (1)

14th amendment due process and equal, (2) Title VII by retaliation and disparate treatment, (3) Title 42 U.S.C. § 1981, and (4) Title VI. (ROA.248-268). In this regard, Dr. Shahrashoob alleges the following facts in support of the theories of recovery:

> [M]ore Assistant Professors and Lecturers were hired by Arul Jayaraman for the Chemical Engineering Department during or around the time Plaintiff was terminated in January 2021. None of these new hires were of Iranian national origin. All Assistant Professors were hired to perform the same or substantially similar job responsibilities that Plaintiff performed as an Assistant Professor. Mohammad Alam, an Indian Male, was hired to replace Plaintiff after she was terminated. Alam, however, did not possess the same degree of qualifications that Plaintiff possessed. His qualifications were objectively not proficient, and arguably, not sufficient, as the qualifications of Plaintiff. He did not possess a Chemical Engineering degree.

(ROA. 256).

On July 12, 2023, Texas A&M University (and the other defendants) filed a motion to dismiss the second amended complaint (ROA.333-344), Dr. Shahrashoob filed a response (ROA.351-358), and Texas A&M University filed a reply (ROA.361-368).

**d.  Texas A&M University's motion for summary judgment and Dr. Shahrashoob's response, and a further paring down of the case.**

*i.     Texas A&M University's motion for summary judgment.*

On October 2, 2023, Texas A&M University (and the other defendants) filed a motion for summary judgment (ROA.379-409) and 14 exhibits attached as an appendix to the motion (ROA.411-472).

Texas A&M University argues in its motion for summary judgment that Dr. Shahrashoob fails to state a claim for disparate treatment under Title VII, she cannot establish that her protected activity was the "but for" cause of her increased course load or her termination, she cannot make a valid claim for relief for the alleged violations of her due process or equal protection, and she cannot overcome the individual defendants' qualified immunity (ROA.386-391, 393-409).

The exhibits attached to the motion are the following: Exhibit 1 is a short excerpt of Dr. Shahrashoob's deposition wherein she states that during the discussion she had with her supervisor before she was first hired as a lecturer there was no talk regarding research funds because the lecturer position did not entail the need for research funds, and that she was told the university would sponsor her for a

green card (ROA.412-414). Exhibit 2 is portions of Dr. Jayaraman's deposition wherein he testifies regarding the dates and documents discussed in **part a** above (ROA.417-423). He said that Dr. Shahrashoob's employment was shortened to 4.5 months instead of 9 months, and that she was not allowed to work until May 31, 2021, because: "Academic professional tract offers are based on budgetary considerations and need for the department" (ROA.421), "considering the need, teaching needs of the department" (ROA.422), and "[b]ased on the teaching needs of the department and the classes they teach and what needs we had to offer in terms of classes, these faculty were chosen, in addition to the budgetary constraints" (ROA.423). When pressed on the details of this decision as for why Dr. Shahrashoob and other faculty were treated differently, he was asked and answered as follows:

> Q. From the time period of August 14 through May of 2021, were any new faculty hired for the chemical engineering department?
>
> A. We interviewed tenure-track faculty in the spring of 2021.
>
> Q. . . . If there were budgetary concerns, why were you interviewing for a potential new candidate?
>
> A. We received faculty positions in the fall and – from the university and, therefore, we interviewed.
>
> Q. Were any of them hired?
>
> A. Yes, sir.
>
> Q. Do you remember how many?

A.  One.

Q.  Do you remember his or her name?

A.  I take it back. Two. Two faculty members.

Q.  Do you remember their names?

A.  Yes, sir.

Q.  What were their names?

A.  Dr. Manish Shetty, Dr. Jeetain Mittal.

Q.  Do you remember the exact date they were hired?

A.  No, sir.

Q.  Do you remember the month and year they were hired?

A.  2021, around May, April or May. I do not remember the exact month.

(ROA.423).

Attached as Exhibits 3 through 11 to Texas A&M University's motion for summary judgment are the documents referred to chronologically in **part a** above (ROA.426-464). Attached as Exhibit 13 are Texas A&M University's policies regarding foreign national employees (ROA. 465-471). And, attached as Exhibit 14 is the declaration of Shilpa Hegde Murur, which states:

> 1.  I am employed at Texas A&M University (TAMU). At the time relevant to this lawsuit, I held the position of Immigration Coordinator. As Immigration Coordinator my job duties included assisting employees with immigration issues.
>
> 2.  In March 2019, TAMU laterally transferred Shahrashoob from a Lecturer position to Instructional Assistant Professor, another non-tenure track position. EXH 4. The change in title was an effort to assist Shahrashoob in obtaining her permanent residency. TAMU had started the Labor Certification process which is the first step towards permanent residency.

> Accordingly, a Prevailing Wage Request was filed with the Department of Labor ("DOL") by TAMU. The DOL's response to the request revealed that a higher prevailing wage was required than currently paid to Shahrashoob.
>
> 3.  In an effort to assist Shahrashoob with her application for permanent residency, TAMU increased her salary to $73,755 for a 9-month appointment, representing a 15% increase a pay, hoping to qualify her salary for the DOL required wage rate.

(ROA.472).

> ii.     *Dr. Shahrashoob's response.*

Dr. Shahrashoob filed a response to the motion for summary judgment (ROA.474-480) with nine exhibits attached (ROA.481-531). Within her response, Dr. Shahrashoob dismissed her claims as to all defendants except for Texas A&M University (ROA.475).

Exhibits 1, 2, 3, 4, 6, and 8 are the documents referred to in the chronology of events leading up to the lawsuit that are discussed in **part a** above (ROA.483-496, 511-512, 525-526). Exhibit 7 are excerpts from Dr. Jayaraman's deposition which are most of the same excepts attached to the university's motion for summary judgment (ROA.514-523). Exhibit 9 is a printout of a portion of Texas A&M University's website discussing Dr. Hostle (ROA.529-531). And Exhibit 5 is the declaration of Dr. Shahrashoob's (ROA.500-509) wherein she states as follows:

> They mentioned budgetary constraint as the cause of the reduction of my contract however; the budgetary constraint was a pretext as the department replaced me with Mohammed Alam, an Indian male faculty who did not even have a chemical engineering degree! They asked me to train him on my job. Department also hired new Indian male faculties in Fall 2020, promoted Jayararnan to the department head on June 2020, promoted two other faculties and brought a Indian male faculty, Faisal Kahn from Canada to TAMU on summer 2020. During COVID, the faculties received an email from the university president saying that TAMU does not have any budgetary constraint. However, I was the only faculty whose contract was drastically reduced.

(ROA.501).

> They have replaced me with an Indian professor, Mohammed Alam, without a chemical engineering background and degree. Last but not least, I was the only instructor whose employment has been terminated!

(ROA.508).

Within the body of Dr. Shahrashoob's response to the motion for summary judgment she states as follows:

> The second issue presented is whether Plaintiff was treated unfavorably compared to similarly situated employees when she was terminated/had her employment appointment shortened. Defendant did treat Plaintiff unfavorably compared to similarly situated employees. No other similarly situated employee, a full time assistant professor in the Chemical engineering department was forced out due to a shortened appointment when Plaintiff was released from her employment by Defendant. James Holste, whom Dr. Jayaraman testified was released at the same time. Dr. Shahrahoob, was not actually released. He is still working for Texas A&M, whereas, Dr. Shahrashoob is not.

(ROA.476).

*iii.    Texas A&M University's reply.*

Texas A&M University filed a reply arguing that Dr. Shahrashoob fails to identify evidence of discrimination, retaliation, or pretext leaving no genuine issue as to any material fact, the evidence shows that Texas A&M University did not base its decisions on national origin or gender, there is no evidence of but-for causation as to the claims, and there is no evidence showing Texas A&M University's reasons for shortening and not renewing Dr. Shahrashoob's appointments were pretextual (ROA.534-541).

**e.    The district court's memorandum opinion and judgment granting Texas A&M University's motion for summary judgment as to the Title VII discrimination and retaliation claims.**

On November 28, 2023, the district court issued its memorandum opinion (ROA.544-559) and judgment (ROA.560) granting Texas A&M University's motion for summary judgment and stating that the university's motion to dismiss is moot. (ROA.544, 548, 559). Regarding the grant of the motion for summary judgment, the district court concluded that "Dr. Shahrashoob has voluntarily dismissed all claims except her Title VII claims against Texas A&M" University (ROA.544).

As for the **retaliation** claim, the district court points out that for a plaintiff to "establish a prima facie case of retaliation [it must show that]: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment against the employee; and (3) a causal connection exists between that protected actively and the adverse employment action." (ROA. 550). The district court then concludes that (1) based on the summary judgment evidence "[t]he first element of Dr. Shahrashoob's prima *facie case* is satisfied" (ROA.554); (2) Texas A&M University "does not dispute that Dr. Shahrashoob has met the second element of her *prima facie* case" (ROA.554); but that (3) "Dr. Shahrashoob has not carried her burden of showing a factual dispute material to determining whether her protected activity, rather than Texas A&M's budgetary constraints and staffing needs, was the but-for cause of her reduced employment term" (ROA.556). And regarding the specific language used by the district court in resolving the retaliation claim (ROA.550-557), the memorandum opinion states as follows:

> The court finds that Dr. Shahrashoob has not carried her burden of showing a factual dispute material to determining whether her protected activity, rather than Texas A&M's budgetary constraints and staffing needs, was the but-for cause of her reduced employment term. Dr. Jayaraman, in his deposition, offered two distinct reasons for Dr. Shahrashoob's

reduced employment term: "budgetary considerations" and the "teaching needs of the department." (Docket Entry No. 42-1 at 11–12). The evidence highlighted by Dr. Shahrashoob—that the department hired two new faculty members around the time she was terminated—does not undermine Texas A&M's explanation without additional evidence that at least one of the two new faculty members was hired to teach the same classes that Dr. Shahrashoob had taught. Dr. Shahrashoob has not identified evidence that the two new professors—who, unlike Dr. Shahrashoob, were hired to fill tenure-track positions— served the same "teaching needs" that she had served. (Docket Entry No. 42-1 at 13).

(ROA.556).

As for the **discrimination** claim, the district court points out that a "*prima facie* case of discrimination under Title VII requires the plaintiff to show that she: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group" (ROA.557) (quotation marks and brackets omitted). The district court then reasoned that "[t]he only disputed element of Dr. Shahrashoob's prima facie case is whether she was treated less favorably than similarly situated employees outside her protected group," that "[t]he dispute centers around a professor in the chemical engineering department named Dr. James Holste," and that because

Dr. Shahrashoob and Dr. Holste were not similarly situated, she failed to meet her burden of proof (ROA.557-558). The district court concluded by stating: "To the extent Dr. Shahrashoob relies on other faculty members in the department of chemical engineering as comparators, she has failed to make the necessary showing as to whether they were similarly situated to her" (ROA.558). And regarding the specific language used by the district court in resolving the discrimination claim (ROA.557-558), the memorandum opinion states as follows:

> Dr. Shahrashoob has failed to produce evidence raising a factual dispute material to determining whether she and Dr. Holste were similarly situated. The screenshot of Dr. Holste's faculty page shows that he had been on the chemical engineering faculty for decades and was a "Professor of Chemical Engineering," not an Instructional Assistant Professor like Dr. Shahrashoob. (Docket Entry No. 43-9). To the extent Dr. Shahrashoob relies on other faculty members in the department of chemical engineering as comparators, she has failed to make the necessary showing as to whether they were similarly situated to her.

(ROA.558).

## SUMMARY OF ARGUMENT

Regarding Dr. Shahrashoob's **discrimination** claim, the district court's conclusion that she failed to establish the fourth element of the claim should be set aside because she met her burden to rebut the university's explanation that it had discharged her because of "budgetary constraints" and "teaching needs of the department" by presenting evidence that she was replaced by Dr. Alam who is male and is not Iranian; that is, she was replaced by someone outside her protected group. In this regard, Dr. Shahrashoob's declaration shows that Dr. Alam did not have a chemical engineering degree (whereas she did), he did not have a chemical engineering background (whereas she did) and she was asked to train him (indicating she was more qualified than him). The district court's conclusion that Dr. Holste and Dr. Shahrashoob are not similarly situated misses the point that she was required to show that *either* she was replaced with someone outside her protected group *or* that she was treated less favorably than other similarly situated employees outside her protected group. She proved both by way of Dr. Alam.

Regarding Dr. Shahrashoob's **retaliation** claim, the district court's conclusion that she did not establish a causal connection between her protected activity and her being terminated because she "has not identified evidence that the two new professors—who, unlike Dr. Shahrashoob, were hired to fill tenure-track positions—served the same 'teaching needs' that she had served" is not supported by the summary judgment record. Similar to the district court's analysis regarding the discrimination claim, there is no focus on the key fact that the university replaced Dr. Shahrashoob with Dr. Alam. The timing of the replacement in relation to the university's final report on September 16, 2020, regarding the civil rights complaint she filed within the university system, the civil rights complaint she filed with the Texas Workforce Commission on September 22, 2020, her termination on January 14, 2021, the timing of Dr. Jayaraman notifying her that her pay increase had not been approved just 21 days after she had filed the university-system complaint against him (the complaint was filed on April 17, 2020, and the notice of no-pay-increase was on May 8, 2020) give rise to a question of fact as to whether a causal connection exists between the protected activity and Dr. Shahrashoob being discharged.

# ARGUMENT

**a.    Introduction to the argument.**

Dr. Shahrashoob's remaining claims are that Texas A&M University is liable under Title VII for discrimination and retaliation.[2] Specifically, she alleges that on January 14, 2021, she was terminated and replaced by Dr. Mohammad Alam—he is Indian—because of her sex and national origin—she is Iranian—and because she participated in activities protected by Title VII (ROA.256, 476, 501, 508). In this regard, the summary judgment evidence establishes the following key facts:

1. On June 12, 2018, Dr. Shahrashoob was offered and she accepted an appointment of lecturer for the 2018-2019 nine-month education period from September 1, 2018, to May 31, 2019 (ROA.426-426);

2. On February 26, 2019, she was offered and she accepted an appointment of assistant professor for the 2019-2020 nine-month education period from September 1, 2019, to May 31, 2020 (ROA.428-429);

3. On January 23, 2020, she was offered and she accepted an appointment of assistant professor position for the 2020-

---

[2] As the district court said in its memorandum opinion, "Dr. Shahrashoob has voluntarily dismissed her claims against all defendants except Texas A&M. (Docket Entry No. 43 at 2). Dr. Shahrashoob's remaining claims are that Texas A&M violated Title VII by discriminating against her based on her national origin and sex and retaliating against her for her protected activity. (*Id.*)." (ROA.548).

2021 education period from September 1, 2020, to May 31, 2021 (ROA.430-431);

4. On April 17, 2020, she filed a civil rights complaint within the university system against Dr. Jayaraman (ROA.446);

5. On May 8, 2020, Dr. Jayaraman notified her that her pay increase was not approved because of "budgetary constraints" but that the previous offer "will still be valid" (ROA.432);

6. On June 13, 2020, she filed a civil rights complaint against Dr. Jayaraman with the Texas Workforce Commission (ROA.434);

7. On August 14, 2020, Dr. Jayaraman and Vice Chancellor Banks sent her a memorandum notifying her "of the terms and conditions of your appointment for the 2020-2021 academic year, pending final approval of the budget by the Texas A&M University System Board of Regents" (ROA.435, 498);

8. On September 16, 2020, the university's final report on her April 17, 2020 civil rights complaint issued (ROA.446-463);

9. On September 22, 2020, she filed a complaint of retaliation against the university with the Texas Workforce Commission (ROA.440); and

10. On January 14, 2021 Dr. Jayaraman sent her an email terminating her employment before the 2020-2021 education period had ended with her last day the very next early (ROA.436).

In spite of these facts, the district court granted Texas A&M University's motion for summary judgment, concluding that Dr. Shahrashoob had not rebutted the sex-plus-national-origin neutral explanation (namely, that she was terminated because of "budgetary constraints" and "teaching needs of the department", by focusing on Dr. Holste instead of focusing on her replacement with Dr. Alam

(ROA.556, 558). It is argued below that had the district court focused on Dr. Shahrashoob's replacement with Dr. Alam, the motion for summary judgment would have properly been denied because this replacement gives rise to a question of fact as to whether Texas A&M University's explanation for firing Dr. Shahrashoob was a pretext for its actual reasons of discrimination and/or retaliation. That is, had Texas A&M University fired Dr. Shahrashoob because of "budgetary constraints" and "teaching needs of the department" as it claims, it would not have hired Dr. Alam to replace her.

In this regard, **part b** that follows discusses the applicable standards of review. **Part c** discusses the burdens of proof in a Title VII discrimination and retaliation case. And, **part d** discusses why the district court's ruling on Dr. Shahrashoob's Title VII discrimination and retaliation claims should be reversed.

**b.    The standards of review applicable to the district court's grant of summary judgment.**

The Fifth Circuit recently restated the standards of review applicable to a district court's summary judgment ruling as follows:

> We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmovant. *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 616 (5th Cir. 2020) (citations omitted). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any

> material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Id*. In making this assessment, the court "may not make credibility determinations or weigh the evidence." *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)).

*Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (age discrimination case).

### c.    The burdens of proof in a Title VII discrimination and retaliation case.

"Title VII is a broad remedial measure, designed to assure equality of employment opportunities." *Pullman-Standard v. Swint*, 456 U.S. 273, 276 (1982) (quotation omitted). Title VII makes it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e—2(a)(a). "[T]he ordinary meaning of 'because of' is 'by reason of' or 'on account of,'" so "Title VII's 'because of' test incorporates the simple and traditional standard of but-for causation." *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 140 S. Ct. 1731, 1739 (2020) (quotations omitted). A plaintiff may show discrimination by showing that her membership in a protected class

was a "motivating factor" for the challenged employment practice. §
2000e—2(m).

"An employer violates Title VII when it intentionally fires an
individual employee based in part on sex." *Bostock*, <u>140 S. Ct. at 1741</u>.
Title VII also prohibits discrimination based on a combination of
protected characteristics, such as "sex-plus-race" discrimination, i.e.,
discrimination targeted only at employees of a particular race and
sex. See *Connecticut v. Teal*, <u>457 U.S. 440, 445</u> (1982) ("It is clear
that Congress never intended to give an employer license to
discriminate against some employees on the basis of race or sex
merely because he favorably treats other members of the employees'
group.").

And finally, when determining whether a person is subjected to
discrimination under Title VII, the "focus should be on individuals,
not groups." *Bostock*, <u>140 S. Ct. at 1740</u>. That is, if an Iranian shows
that she would not have been terminated if she had been non-
Iranian—in other words, if she would not have been terminated but
for her status as Iranian—this showing is sufficient to establish
liability under Title VII.

Additionally, employers are prohibited from retaliating against employees who engage in protected conduct. In this regard, Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

When a plaintiff sues under Title VII, she may prove the claim by either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). When the claims are made based on circumstantial evidence, the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 782, 802 (1973) applies. *Id.* The circumstantial evidence claims for discrimination and retaliation under the *McDonnell Douglas* framework have different requirements; the Fifth Circuit explains as follows:

> Under that framework, the plaintiff must first establish a prima facie case of **discrimination**, which requires a showing that the plaintiff (1) is a member of the protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. To establish a prima facie case of **retaliation**, the plaintiff must establish that: (1) he

> participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.

*McCoy*, 492 F.2d at 556-557 (footnotes omitted)(emphasis added); see also *West v. City of Houston, Texas*, 960 F.3d 736, 740 (5th Cir. 2020) (quoting *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 388, 360 (5th Cir. 2004)). As for the fourth prong of the *McDonnell Douglas* framework applicable to a **discrimination** claim—that disparate treatment of employees by employers must involve similarly situated individuals—the Fifth Circuit has stated as follows:

> We have defined "similarly situated" narrowly, requiring the employees' situations to be "nearly identical." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). Employees are similarly situated when they (1) "held the same job or responsibilities," (2) "shared the same supervisor or had their employment status determined by the same person," and (3) "have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted).

*West*, 960 F.3d at 740; see also *Wheeler v. Aventis Pharmaceuticals*, 360 F.3d 853, 857 (8th Cir. 2004) ("The test to determine if one is 'similarly situated' varies at each stage of a *McDonnell Douglas* analysis. At the prima-facie stage it is 'not onerous,' however at the third stage (proving pretext) it is 'rigorous.'") (citation omitted); and

*id.* at 858 ("[T]he burden for establishing 'similarly situated' at the pretext stage is rigorous.").

**d.  Discussion as to why the district court's ruling on the Title VII discrimination and retaliation claims should be reversed.**

Title VII cases can be proven by evidence of disparate treatment or disparate impact. Compare *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 1094 (1981) (stating that the "burden of establishing a prima facie case of disparate treatment is not onerous"), with *Bauer v. Bailar*, 647 F.2d 1037, 1045 (10th Cir. 1981) ("Statistical evidence is, of course, relevant to a claim of disparate treatment"). This is a disparate treatment case because Dr. Shahrashoob alleges she was terminated and replaced with Dr. Alam based on her sex-plus-national-origin status. See *Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1033 (5th Cir. 1980) (discussing "sex-plus" discrimination). That is, disparate treatment involves intentionally dealing with similarly situated employees differently because of their race, color, religion, sex, national origin, or a combination of these statuses. 42 U.S.C. § 2000e—2(a)(a); see, e.g., *Chescheir v. Liberty Mut. Ins. Co.*, 713 F.2d 1142 (5th Cir. 1983) (Title VII violation where employer enforced differently company

policy prohibiting employees from attending law school while working, depending on whether employee was male or female; female employees were discharged for violating policy, while male employees were not).

As for her **discrimination** claim, Dr. Shahrashoob was required to show that she is a member of a protected group, that she was qualified for the position at issue, that she was discharged or suffered some adverse employment action by the employer, and that she was replaced by someone outside her protected group. *McCoy*, 492 F.3d at 556 (the *McDonnell Douglas* elements). The district court concluded that Dr. Shahrashoob had established the first three of these four elements—namely, she is a member of the relevant protected class because she is female-plus-Iranian; she is qualified for the position from which she was fired; and she was discharged from her position—but that she had failed to establish the fourth element because she was not similarly situated to Dr. Holste. However, the key allegation made by Dr. Shahrashoob that is directly relevant to the fourth *McDonnell Douglas* element is that she was replaced by

Dr. Alam.[3] The district court did not directly deal with this fact but rather broadly and generally stated that "[t]o the extent Dr. Shahrashoob relies on other faculty members in the department of chemical engineering as comparators, she has failed to make the necessary showing as to whether they were similarly situated to her" (ROA.558).

The dispositive question is whether Dr. Shahrashoob met her burden to rebut the university's explanation that it had discharged her because of "budgetary constraints" and "teaching needs of the department." In that regard, Dr. Shahrashoob was required to establish that she was *either* replaced by someone outside her protected group, *or* treated less favorably than other similarly situated employees outside her protected group. *McCoy*, 492 F.3d at 556. The fact that she was replaced by Dr. Alam establishes this burden because he is male and is not Iranian; that is, she was replaced by someone outside her protected group. Additionally, Dr. Shahrashoob's declaration shows that Dr. Alam did not have a chemical engineering degree (whereas she did), he did not have a

---

[3] This was stated in Dr. Shahrashoob's second amended complaint (ROA.256) and in her response to Texas A&M University's motion for summary judgment (ROA.501, 508).

chemical engineering background (whereas she did) and she was asked to train him (indicating she was more qualified than him), and therefore, she has shown *both* that she was replaced by someone outside her protected sex-plus-national-origin protected group *and* that she was treated less favorably than other similarly situated employees outside her sex-plus-national-origin protected group. *McCoy*, 492 F.3d at 556. In short, the district court's holding granting Texas A&M University's motion for summary judgment as to the discrimination claim should be reversed.

As for her **retaliation** claim, Dr. Shahrashoob was required to show that she participated in an activity protected by Title VII, her employer took an adverse employment action against her, and a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.2d at 456-557. The district court concluded that Dr. Shahrashoob established that (1) she participated in an activity protected by Title VII by sending her July and early August 2020 emails asking whether Dr. Ugaz was treating her differently because she is an Iranian woman or because she had filed a discrimination complaint with the Texas Workforce Commision (ROA.552-554) and that (2) there is no dispute that Texas

A&M University took an adverse employment action against her by terminating her employment on January 14, 2021.

As for the district court's conclusion that Dr. Shahrashoob did not establish a causal connection between her protected activity and her being terminated, the memorandum opinion states that she "has not identified evidence that the two new professors—who, unlike Dr. Shahrashoob, were hired to fill tenure-track positions—served the same 'teaching needs' that she had served" (ROA.556). Similar to the district court's analysis regarding the discrimination claim, there is no focus on the key fact that the university replaced Dr. Shahrashoob with Dr. Alam. The timing of the replacement in relation to the university's final report on September 16, 2020, regarding the civil rights complaint she filed within the university system, the civil rights complaint she filed with the Texas Workforce Commission on June 13, 2020, a memorandum notifying her "of the terms and conditions of her appointment on August 14, 2020, the civil rights complaint she filed with the Texas Workforce Commission on September 22, 2020, her termination on January 14, 2021, the timing of Dr. Jayaraman notifying her that her pay increase had not been approved just 21 days after she had filed the university-system complaint against him (the

complaint was filed on April 17, 2020, and the notice of no-pay-increase was on May 8, 2020) give rise to a question of fact as to whether a causal connection exists between the protected activity and Dr. Shahrashoob being discharged. The district court's ruling otherwise should be reversed.

## CONCLUSION AND RELIEF SOUGHT

Plaintiff-Appellant requests that the district court's judgment of dismissal be reversed and remanded.

Respectfully submitted,

/s/Timothy A. Hootman
Timothy A. Hootman
2402 Pease St.
Houston, TX 77003
713.247.9548 (o)
713.366.6229 (c)
thootman2000@yahoo.com

ATTORNEY FOR PLAINTIFF –
APPELLANT

## CERTIFICATE OF SERVICE

I certify that on this day a copy of this document was filed electronically using the CM/ECF system and served on the following:

> Yvonne Denise Bennett
> Assistant Attorney General
> OFFICE OF THE ATTORNEY GENERAL OF TEXAS
> P.O. Box 12548
> Austin, TX 78711-2548
> yvonne.bennett@oag.texas.gov

Dated: March 12, 2024.

/s/Timothy A. Hootman
Timothy A. Hootman

## CERTIFICATE OF COMPLIANCE WITH RULE 32

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,021 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Georgia 14 point font.

Dated: March 12, 2024.

/s/Timothy A. Hootman
Timothy A. Hootman